EUGENE K. WILLIAMS v. RUTHERFORD FREIGHT LINES, INC., A
CORPORATION, AND LESTER L. WOFFORD, AN INDIVIDUAL
— AND —
JAMES M. WILLARD v. RUTHERFORD FREIGHT LINES, INC., A
CORPORATION, AND LESTER L. WOFFORD, AN INDIVIDUAL

No. 7121SC3

(Filed 24 February 1971)

1. **Libel and Slander § 4— words actionable per quod — special damages**
Where false statements are actionable only *per quod*, some special damage must be pleaded and proved.

2. **Rules of Civil Procedure § 9— averment of special damages**
When items of special damage are claimed each shall be averred. G.S. 1A-1, Rule 9(g).

3. *Libel and Slander § 4— special damage*
Special damage, as that term is used in the law of defamation, means pecuniary loss, as distinguished from humiliation.

4. **Libel and Slander § 2— words actionable per se — presumption of malice and damage**
If defamatory words are actionable *per se*, malice and damage are conclusively presumed and do not have to be alleged or proved.

5. **Libel and Slander § 2— words actionable per se**
Where the injurious character of words appears on their face as a matter of general acceptance, they are actionable *per se*.

6. **Libel and Slander § 2— words actionable per se — classification of actionable statements**
False statements which may be classified as actionable *per se* are generally limited to those which charge plaintiff with a crime or offense involving moral turpitude, impeach his trade or profession, or impute to him a loathsome disease; a fourth category, created by G.S. 99-4, applies to statements charging incontinency to a woman.

7. **Libel and Slander § 5; Master and Servant § 16— words actionable per quod — statement that labor officials were "gangsters"**
A statement that the business agent and the shop steward of a Teamsters Union local were "nothing but a bunch of g. . . d. . . . s. . . o. . . b. . . gangsters," which statement was uttered by a trucking company employee during a contract grievance dispute with the Teamsters officials, *held* actionable *per quod*, not actionable *per se;* the statement is insufficient to permit recovery unless there is a showing of special damage.

8. **Libel and Slander § 2— words actionable per se — guilt of a punishable offense**
In order to be actionable *per se*, a false statement must impute that a person is guilty of a punishable offense.

Williams v. Freight Lines and Willard v. Freight Lines

9. **Libel and Slander § 4— actions per quod — special damage — mental suffering — emotional distress**

Emotional distress and mental suffering are not alone sufficient to establish a basis for relief in cases which are actionable only *per quod.*

10. **Libel and Slander § 6— action for slander per quod — filing of supplemental pleadings — special damage — limitation of action**

In an action for slander *per quod* arising out of a 1963 labor dispute between the plaintiffs, who were officials of the Teamsters Union, and a trucking company employee, supplemental pleadings which were filed by the plaintiffs in 1970 for the purpose of alleging special damage did not relate back to the plaintiffs' original complaints that were filed in 1963, where (1) actionable damages for slander had not arisen when the original complaints were filed in 1963 and (2) the events supporting the allegations of special damage took place after the expiration of the [then] six-months statute of limitations for slander actions. G.S. 1-54; G.S. 1-55.

11. **Libel and Slander § 12— slander per quod — institution of action — special damage**

It is essential that some special damage must occur before an action for slander *per quod* is instituted.

12. **Rules of Civil Procedure § 15— distinction between supplemental pleadings and amendments**

The distinction between supplemental pleadings and amendments is that supplemental pleadings relate to occurrences, transactions and events which may have happened since the date of the pleadings sought to be supplemented; whereas amendments relate to occurrences, transactions and events that could have been, but for some reason were not, alleged in the pleadings sought to be amended. G.S. 1A-1, Rules 15(c) and 15(d).

13. **Rules of Civil Procedure § 15; Libel and Slander § 14— slander per quod — pleadings — filing of supplemental pleadings**

Plaintiffs' purported "amended complaints" in a slander action were in effect supplementary pleadings where the events alleged in the supplemental pleadings occurred after the filing date of the original complaint.

APPEAL by plaintiffs from *Exum, Superior Court Judge,* 4 May 1970 Session of FORSYTH County Superior Court.

In April of 1963 plaintiffs instituted separate suits alleging that they had been slandered by the individual defendant (Wofford) while he was acting as the lawful agent of the corporate defendant (Rutherford). The complaints allege the following:

In April of 1963 the plaintiff Williams was business agent for Local 391 of the International Brotherhood of Teamsters,

which was the bargaining agent for Rutherford's employees at its Kernersville, North Carolina, terminal. The plaintiff Willard was a truck driver for Rutherford and was the Union shop steward for the bargaining unit at the Kernersville terminal. Wofford was terminal manager. On 4 April 1963, while Willard and Williams were discussing a contract grievance with Wofford, in Wofford's office, Wofford stated in a loud boisterous manner, "You are nothing but a bunch of g. . . d. . . s. . . o. . . b. . . gangsters." The statement was heard by various other employees and was repeated at various times by Wofford outside the office and in the presence of company employees and other persons. When requested to withdraw the statement Wofford refused and added that plaintiffs' conduct in their occupation had been like that of gangsters.

The complaints also alleged that the statements were untrue; that they were made and widely disseminated by defendants with malice; that they were calculated to have a defaming effect upon plaintiffs' reputation; and, that the statements did result in damage to plaintiffs' reputations and standings in their occupations, causing them unrest and worry.

In January of 1970, plaintiffs were granted leave to file amendments to their complaints, or to file supplemental pleadings. They first filed "supplemental complaints" adding paragraphs to their original pleadings in which more specific allegations of damages were set forth. Later, also with leave of the trial court, plaintiffs filed amended complaints. Allegations in the amended complaints were similar to those in the original complaints except for allegations of damages.

Williams' amended complaint alleged that as a direct result of the defamatory statement he was not re-elected business agent of the Union when the elections were held on 20 November 1963; that as a result of this he lost his employment as of 10 December 1963; that he was unable to obtain employment until 4 February 1964, and then only in an area outside of that covered by Local 391; that his new employment required him to move his residence at considerable expense and resulted in his earnings being substantially decreased.

Willard's amended complaint alleged that as a result of defendant's statements, his work with Union members as shop steward was undermined; that he was confronted with the statements so often that on 10 April 1963, he suffered severely

from nervousness and anxiety and was hospitalized for twelve days and unable to work for three weeks thereafter; that he lost wages at the rate of $3.05 per hour during this period of disability; that he was discharged from his employment in July of 1965 and has since been unable to obtain work in the trucking industry, being forced to accept employment in a different line of work at a substantially decreased salary.

Defendants moved for summary judgment at the 27 April 1970 Session of Forsyth County Superior Court. The motion was allowed on 4 May 1970 by judgment wherein the court held, *inter alia*, that the alleged statements were actionable only *per quod*, and that special damages were not alleged as required and could not have been alleged when the complaints were filed since neither plaintiff had suffered any damage at that time. Plaintiffs appealed and their appeals were consolidated by consent.

*White, Crumpler and Pfefferkorn by James G. White, Fred G. Crumpler, Jr., Joe P. McCollum, Jr., William G. Pfefferkorn and Michael J. Lewis for plaintiff appellants.*

*Blakeney, Alexander & Machen by Ernest W. Machen, Jr., and J. W. Alexander, Jr., for defendant Rutherford Freight Lines, Inc., and Childs & Patrick by Bailey Patrick, Jr., for defendant Lester L. Wofford.*

GRAHAM, Judge.

[1-3] Where false statements are actionable only *per quod*, some special damage must be pleaded and proved. 5 Strong, N. C. Index 2d, Libel and Slander, § 4, p. 207, and cases therein cited. "When items of special damage are claimed each shall be averred." G.S. 1A-1, Rule 9(g). Special damage, as that term is used in the law of defamation, means pecuniary loss, as distinguished from humiliation. *Penner v. Elliott*, 225 N.C. 33, 33 S.E. 2d 124; *Scott v. Harrison*, 215 N.C. 427, 2 S.E. 2d 1; *Payne v. Thomas*, 176 N.C. 401, 97 S.E. 212; 1 McIntosh, N. C. Practice & Procedure 2d, § 991, p. 541.

[4] The original complaints filed herein contained no allegations of special damage. Plaintiffs say that none are necessary, contending that defendants' alleged statements are actionable *per se*. If defamatory words are actionable *per se*, malice and damage are conclusively presumed and do not have to be alleged

or proved. *Flake v. News Co.*, 212 N.C. 780, 195 S.E. 55; *Oates v. Trust Co.*, 205 N.C. 14, 169 S.E. 869.

[5, 6]   Where the injurious character of words appear on their face as a matter of general acceptance they are actionable *per se*. 5 Strong, N. C. Index 2d, *supra*. Decisions in this State generally limit false statements which may be classified as actionable *per se* to those which charge plaintiff with a crime or offense involving moral turpitude, impeach his trade or profession, or impute to him a loathsome disease. (A fourth category has been added by statute; that is, statements charging incontinency to a woman. G.S. 99-4).

[7, 8]   Plaintiffs argue that the language allegedly used by defendants is actionable *per se* in that it charges them with a crime, and also tends to prejudice them in their occupations as truck drivers and Union leaders. We disagree. It is true that *Webster's Third New International Dictionary* defines a gangster, among other things, as "a member of a gang of criminals." However, the law contemplates that in order to be actionable *per se* a false statement must impute that a person is guilty of a punishable offense. "Words which convey only the imputation of an imperfect sense or practice of moral virtue, duty, or obligation are not sufficient to support the action. The crime charged, too, must be such as is punishable by the common or statute law, for if it be only a matter of spiritual cognizance it is not, according to the authorities, actionable to charge it." *Ringgold v. Land*, 212 N.C. 369, 371, 193 S.E. 267, 268. See also *Penner v. Elliott, supra; Deese v. Collins*, 191 N.C. 749, 133 S.E. 92; *Payne v. Thomas, supra; Beane v. Weiman Co., Inc.*, 5 N.C. App. 276, 168 S.E. 2d 236.

In charging plaintiffs with being "gangsters," defendants were not charging them with a specific crime for which they could be indicted and punished. The language, especially under the circumstances here alleged, was nothing more than vituperation or name calling arising out of a dispute over a labor grievance. This is not sufficient to permit recovery, absent a showing of special damage. As was stated in *Bouligny, Inc. v. Steelworkers*, 270 N.C. 160, 173, 154 S.E. 2d 344, 356, "[e]ven where the plaintiff is an individual, some thickness of skin is required of him by the law in the realm of labor disputes, just as in battles in the political arena."

Neither do we think the language actionable *per se* as an impeachment of plaintiffs' business or occupation. With respect to this category of defamatory statements, Dean Prosser states: "The statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities, where such special significance is lacking." Prosser, Law of Torts 3rd, 776.

Plaintiff relies on *Badame v. Lampke,* 242 N.C. 755, 89 S.E. 2d 466. There, a competitor allegedly stated falsely to one of plaintiff's customers that plaintiff, a sewing machine salesman, would not give a good machine and that a police captain could tell the customer all about the shady deals the plaintiff had pulled. The statement was held to be actionable *per se.* However, that statement, unlike the alleged characterization of plaintiffs here, tended to degrade defendant's business rival by charging him with dishonorable conduct in his business. The opinion in the case expressly notes this distinction:

> "However, the better reasoned decisions seem to hold that in order to be actionable without proof of special damage, the false words (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business. That is to say, it is not enough that the words used tend to injure a person in his business. To be actionable *per se,* they must be uttered of him in his business relation. *James v. Haymes,* 160 Va. 253, 168 S.E. 333; *Herman v. Post,* 98 Conn. 792, 120 A. 606; *Canton Surgical, etc., Chair Co. v. McLain,* 82 Wis. 93, 51 N.W. 1098; 53 C.J.S., Libel and Slander, Sec. 43; 33 Am. Jur., Libel and Slander, Sec. 64. See also Annotations: 52 A.L.R. 1199 and 86 A.L.R. 442. Defamation of this class ordinarily includes charges made by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct in business. *Broadway v. Cope, supra;* 33 Am. Jur., Libel and Slander, Sections 68 and 70."

The trial judge also held that the alleged damages arose out of a labor dispute; that all parties were subject to the National Labor Relations Act; and consequently, even if the allegations charged slander *per se,* plaintiffs could have no right of recovery, in the absence of allegation and proof of special damages. *Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657,

15 L.Ed. 2d 582; *Bouligny, Inc. v. Steelworkers, supra.* Since we hold the allegations actionable *per quod,* it is unnecessary that we pass on this theory of the cases.

[9] Plaintiffs further contend that even if the alleged statements are not actionable *per se,* special damages have been alleged in their supplementary pleadings and amended complaints. It is clear that many of the damages alleged in the later pleadings are not "special" within the meaning of that term as used in the law of defamation, in that emotional distress and mental suffering are not alone sufficient to establish a basis for relief in cases which are actionable only *per quod. Penner v. Elliott, supra; Scott v. Harrison, supra;* McCormack on Damages, § 114, p. 419; 3 Restatement of Torts, § 575. Among cases from other jurisdictions which are particularly pertinent on this point are *Harrison v. Burger,* 212 Ala. 670, 103 So. 842; *Urban v. Hartford Gas Co.,* 139 Conn. 301, 93 A. 2d 292; *Arturi v. Tiebie,* 73 N.J. Super. 217, 179 A. 2d 539.

[10] We assume, for purposes of this decision, that allegations by Williams that he lost a Union election on 20 November 1963, and as a result thereof lost his employment on 10 December 1963, and allegations by Willard that he lost his employment in July, 1965, constitute allegations of special damages. However, all of these events took place more than six months before they were pleaded by way of amended complaints. Defendants pleaded G.S. 1-55 which at the time provided that actions for slander must be brought within six months. (Slander has now been added to G.S. 1-54 which provides for a limitation of one year. However, the amendment to that statute, effective 23 June 1969, applies only to actions brought or accruing after that date.) The trial court held that defendants' plea of the statute of limitations barred the claims since no special damage occurred within six months prior to the filing of the amended complaints in which special damages were, for the first time, alleged. The court also held that since neither plaintiff suffered special damage prior to the filing of the original complaints on 26 April 1963, no right to recover could be established.

[11] Plaintiffs argue, however, that their amendments relate back to the date of the original complaints because an injured party is entitled to recover for all damages, past, present and future. This is true in the ordinary tort case, but where, as here, it is essential that some special damage must occur before a

---

---

claim is actionable, at least some special damage must have occurred by the time the action is instituted.

In *Crawford v. Barnes,* 118 N.C. 912, 24 S.E. 670, the special damage relied upon in the complaint was the loss of an election on 6 November. The action was instituted by the issuance of summons on 17 September. Our Supreme Court held that the language alleged to have been uttered by defendant was not actionable *per se,* and in affirming an order sustaining a demurrer, stated:

> "The action, therefore, cannot be sustained, except upon allegation and proof of special damage. The special damage alleged, to wit, the loss of the election of the plaintiff to Congress, did not accrue, according to the complaint, until 6 November, and the summons was issued 17 September. The damage not having accrued before the summons issued, the action cannot be maintained."

In *Bynum v. Commissioners,* 101 N.C. 412, 416, 8 S.E. 136, 138, we find:

> "It would be alike unreasonable and unjust to allow a plaintiff to bring his action and maintain it against the defendants before he had any cause of action in some way arising. In the nature of the pleadings, they relate to the time the action began, and ordinarily the plaintiff and the defendant must respectively allege the cause of action and the counterclaim as they existed at that time."

Plaintiffs further assert that the essential special damages set forth in their amended complaints should relate back under the provisions of G.S. 1A-1, Rule 15(c), to the time when the original complaints were filed. Rule 15(c) provides:

> *"Relation back of amendments.*—A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."

[12, 13] We must note, however, that Rule 15 also provides in subsection (d) for the filing of "Supplemental pleadings." The distinction between supplemental pleadings and amendments is that supplemental pleadings relate to occurrences, transactions and events which may have happened since the date of

the pleadings sought to be supplemented; whereas, amendments relate to occurrences, transactions and events that could have been, but for some reason were not, alleged in the pleadings sought to be amended. *United States v. Russell,* 241 F. 2d 879 (1st Cir. 1957) ; *Dewey v. Clark,* 61 A. 2d 475 (Mun. App. D.C. 1948) ; 1A Barron and Holtzoff, Federal Practice and Procedure (Rules Ed. Wright), § 455. Consequently, plaintiffs' "amended complaints" were in effect supplementary pleadings though designated as amendments. Rule 15 (d) does not mention "relation back" as does Rule 15 (c). Apparently the case law is not clearly developed on the extent to which a supplemental complaint will be held to relate back for statute of limitations purposes. See Wright, Federal Courts, p. 241. Some cases admittedly take a liberal view and treat a supplementary pleading as an amendment for purposes of applying the relation back doctrine. *Security Insurance Co. of New Haven v. United States,* 338 F. 2d 444 (9th Cir. 1964) ; *United States v. Reiten,* 313 F. 2d 673 (9th Cir. 1963).

[10] We express no opinion as to whether supplementary pleadings may, in some cases, relate back to the original pleading in order to prevent an action from being barred by the statute of limitations. However, we hold that in this case there can be no relation back because at the time the suits were instituted no actionable damages existed, nor did the claims alleged become actionable within the time provided by statute for the instituting of suits in slander actions. The statute of limitations began to operate when the alleged false statements were made in April, 1963. The first possible element of special damage occurred when Williams lost a Union election more than six months thereafter. With respect to Willard, his special damage did not occur until July, 1965, when he was discharged from his employment. This was more than two years after his complaint was filed. Prior to the times mentioned, there had been no actionable claims and the complaints filed simply anticipated claims that might, or might not, become actionable.

To hold that plaintiffs' later pleadings relate back to the time the original complaints were filed would be to extend the statute of limitations indefinitely in defamation cases which are actionable only *per quod.* For instance, a plaintiff could file complaint within the time provided by statute, though no actionable claim existed at that time, and await the possibility that the alleged utterance would in the perhaps distant future cause

pecuniary damage. We note that the cases at hand are still pending almost nine years after complaints were filed. If, as a result of the alleged statements made in 1963, plaintiffs had first suffered pecuniary damage in 1971, could life be breathed into the otherwise lifeless claims by filing supplemental pleadings and having them relate back to 1963? Logic and justice dictate that the answer be no. The answer must also be "no" where the only pecuniary loss occurred at any time after the statutory period for filing such actions had expired.

Affirmed.

Chief Judge MALLARD and Judge PARKER concur.